UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | | |
|---|---|---|
| BLUE GRASS COMMUNITY FOUNDATION, INC., | ) ) ) | |
| Plaintiff, | ) ) | No. 0:26-CV-00022-REW-EBA |
| v. | ) ) | |
| DONNA SALYER | ) ) | |
| and | ) ) | OPINION & ORDER |
| MAGOFFIN COUNTY COMMUNITY FOUNDATION, INC., | ) ) ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court on Defendants Donna Salyer and Magoffin County Community Foundation, Inc.'s ("MCCF, Inc.") motion to dismiss Plaintiff Blue Grass Community Foundation, Inc.'s ("BGCF") Complaint (DE 1) under Federal Rule of Civil Procedure 12(b)(6). *See* DE 6 (Motion). The motion is fully briefed. *See* DE 8 (Response); DE 9 (Reply). For the reasons that follow, the Court **DENIES** Defendants' Motion.

I.      **Background**

BGCF is a non-profit entity that manages a collection of "subsidiary endowed community funds designed to improve the quality of life" in its community affiliates. DE 1 at ¶ 12. To do so, BGCF "accepts donations to the funds, oversees the operations of the funds through the BGCF Board of Directors, and works with advisory boards for the funds…to award grants and fund projects" that furthers the needs of its communities. *Id.* at ¶ 13. In 2002, Scotty Patrick and BGCF executed an Agreement creating a permanent endowment affiliate of BGCF known as the

Magoffin County Community Foundation (the "Affiliate Fund").  *See* DE 1-1 (Agreement).  The Affiliate Fund was established to carry out charitable and educational purposes for the benefit of Magoffin County, Kentucky.  *See id.* at ¶ 1; DE 1-1 at 1.  The Agreement provided that the Affiliate Fund would join the pool of BGCF investments and establish a volunteer Board of Directors composed of Magoffin County residents specific to the Fund.  *See* DE 1-1 at 2.  The Affiliate Fund agreed to pay BGCF the standard management fees assessed to the Affiliate Fund's individual funds.  *See id.*

The Agreement also provides that the Affiliate Fund may withdraw from BGCF and become an independent community foundation "upon mutual written consent, which shall not be unreasonably withheld."  *Id.* at 3.  BGCF's consent is contingent upon the Affiliate Fund providing written assurance that it meets the following conditions, to wit that it:

> 1) has incorporated under the laws of the state of Kentucky, 2) has received recognition from the Internal Revenue Service as a 501(c)(3) tax exempt organization, and 3) has written into its articles of incorporation a dissolution clause that names the Blue Grass Community Foundation as the recipient of its assets in the event it loses its recognition as a public foundation or ceases to function, unless it has named as recipient of its assets another 501(c)(3) tax exempt organization that will maintain the charitable purposes and the donors' intent of the funds for the benefit of Magoffin County.

*Id.* at 3-4.  Defendant Salyer, a Magoffin County resident who, for many years, served as a member of the Affiliate Fund's Board of Directors, purported to initiate the disaffiliation process on August 28, 2025, by filing Articles of Incorporation for Defendant MCCF, Inc.  *See* DE 1 at ¶¶ 10, 18, 24; DE 1-4.  On November 3, 2025, Salyer filed Amended and Restated Articles of Incorporation for MCCF, Inc. to add a dissolution provision compliant with the third condition for disaffiliation.  *See* DE 6-3 at 5.  The Affiliate Fund has not disaffiliated from BGCF yet, however, as (perhaps among other things) it has not fulfilled all conditions precedent for obtaining BGCF's consent

2

because MCCF, Inc. has not received 501(c)(3) tax exempt status from the IRS. *See* DE 6-1 at 3. The position of the Affiliate Fund Board is not clear, on this record.

After Mr. Patrick's 2024 death, Defendant Salyer was appointed as the Executrix of Patrick's Estate and as successor Trustee of Patrick's revocable living trust. *See* DE 1 at ¶ 29. In these capacities, Salyer has allegedly taken certain actions contrary to her responsibilities as a member of the Affiliate Fund Board and Mr. Patrick's final wishes. *See id.* First, BGCF alleges Salyer "attempted to bring the proceeds of an investment fund under the control of the Estate, even though a beneficiary designation directed that those proceeds were payable upon the death of Mr. Patrick to BGCF." *Id.* at ¶ 30. Second, Salyer improperly moved for and obtained an order from the Magoffin District Court directing an investment company to pay the proceeds of an account to the Estate "by representing that a fund in the name of 'The Buck and Lillie May Patrick Memorial Fund' does not exist." *Id.* at ¶ 31. The account allegedly should have gone to a fund within the Affiliate Fund.

BGCF initiated this action against Salyer and MCCF, Inc. on November 17, 2025, claiming trademark infringement under the Lanham Act (15 U.S.C. § 1125(a)), tortious interference with a prospective advantage, breach of fiduciary duty, and breach of contract. *See* DE 1. In lieu of answering, Defendants filed a motion to dismiss, or in the alternative, a motion to remand to state court. *See* DE 6; DE 6-1. The case was not removed, so remand is not in play.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" This pleading standard requires more than "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65

3

(2007)).  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 127 S. Ct. at 1967).  If the non-moving party's pleading does not do so, or if the non-moving party is barred from recovering on its claims as a matter of law, then dismissal is warranted.  *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S. Ct. at 1969).  Courts "must construe the complaint in the light most favorable to the plaintiff" and "accept all well-pleaded factual allegations as true[.]" *Gaines v. Cross*, 168 F.4th 403, 406 (6th Cir. 2026).

Ordinarily, district courts are not permitted to consider matters beyond the complaint when considering a motion to dismiss under Rule 12(b)(6).  *See Wershe v. City of Detroit, Mich.*, 112 F.4th 357, 372 (6th Cir. 2024).  If the district court does consider matters beyond the complaint, the normal procedure is to "convert the motion to dismiss into a motion for summary judgment." *Id.*  However, a court may consider "exhibits attached to the complaint, exhibits attached to the motion to dismiss briefing, items in the record, or public records without converting the motion to dismiss when these items 'are referred to in the [c]omplaint and are central to the claims contained therein.'" *Id.* at 372-73 (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).  The Court thus disregards the affidavit and any other extra-record materials not properly within the Rule 12 rubric.

### III.    Analysis

#### a.    Trademark Infringement

Defendants move to dismiss BGCF's trademark infringement claim for failure to state a claim upon which relief may be granted. *See* DE 6-1 at 5-10. The Lanham Act defines a trademark as "any word, name, symbol, or device…used by a person…to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of goods, even if that source is unknown." 15 U.S.C. § 1127. "To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *NetJets Inc. v. IntelliJet Group, LLC*, 602 F. App'x 242, 244 (6th Cir. 2015) (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).

BGCF claims to have a valid unregistered trademark[1] in "Magoffin County Community Foundation" and that Defendants' unauthorized use of the disputed trademark is likely to cause confusion as to source in the charitable community and affiliation with BGCF and the Affiliate Fund. *See* DE 1 ¶¶ 39-43. Unregistered trademarks are afforded "essentially the same protection as those that are registered." *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 921 (6th Cir. 2003) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 112 S. Ct. 2753 (1992)). "When evaluating a Lanham Act claim for infringement of an unregistered mark, courts must determine whether the mark is protectable, and if so, whether there is a likelihood of confusion as a result of the would-be

---

[1] Both parties refer to the disputed mark "Magoffin County Community Foundation" as a trademark. However, the Court notes that the disputed mark seems to be more appropriately labeled a service mark. *See* 15 U.S.C. § 1127 ("The term 'service mark' means any word, name, symbol, or device…used by a person…to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown."). The distinction is inconsequential, as "rights to service marks are acquired and protected in the same way as rights to trademarks." *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1054 (6th Cir. 1999). Consistent with the parties, the Court will refer to the disputed mark as a trademark.

infringer's use of the mark." *T Marzetti Co. v. Roskam Baking Co.*, 680 F.3d 629, 633 (6th Cir. 2012) (quoting *Tumblebus v. Cranmer*, 399 F.3d 754, 761 (6th Cir. 2005)).

### 1.    BGCF has alleged facts sufficient to show a protectable trademark

Defendants assert that BGCF has not established ownership of a protectable trademark. *See* DE 6-1 at 6.   Unregistered trademark protectability "is determined by where the mark falls along the established spectrum of distinctiveness. *Id.* (quoting *DeGidio v. West Group Corp.*, 355 F.3d 506, 510 (6th Cir. 2004)).   "Marks are classified in the following categories of increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Id.* Generic marks, the weakest in distinctiveness, are those that "are primarily associated with a type of product rather than with the producer."    *Id.* at 633-34. (quoting *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 404 (6th Cir. 2002)).   Examples of generic terms include "aspirin" or "escalator."  *See Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1117 (6th Cir. 1996).   Generic marks receive no protection.  *Tumblebus*, 399 F.3d at 761-62.   A trademark is descriptive if it describes the intended purpose of the product or service. *See Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1190 (6th Cir. 1998).   A descriptive mark receives protection "only upon a showing of secondary meaning." *Champions Golf Club*, 78 F.3d at 1117. A mark acquires secondary meaning when it becomes distinctive of the entity's goods or services. *See Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir. 1984); *see also Circuit City Stores, Inc.*, 165 F.3d at 1054 ("Secondary meaning is defined as public association of a product or service with a single source[.]").

Defendants argue that "Community Foundation" is generic and thus not entitled to protection.  But this argument does not consider the unregistered mark in its entirety: Magoffin County Community Foundation.  The additional detail assuredly adds a distinctive layer to the

mark not contemplated by Defendants' argument.[2]  It is unclear why the Court would analyze only a portion of Defendants' alleged trademark in determining whether the mark is sufficiently distinctive.

"Magoffin County Community Foundation" is not merely generic.  It is not comparable to other generic terms listed above nor is it a term associated with a product or service rather than an entity.  *See T Marzetti Co.*, 680 F.3d at 633.  The term is more properly characterized as descriptive because it "describes the intended purpose" of the fund.  *See Wynn Oil Co.*, 839 F.3d at 1190. Moreover, BGCF has alleged facts sufficient to show that it, through over 20 years of use, has acquired secondary meaning.  BGCF alleges that it has a page on its website devoted to the mark that includes information about the Affiliate Fund and a statement from Mr. Patrick explaining why he partnered with BGCF to create the Affiliate Fund.  *See* DE 1 at ¶ 21.  BGCF alleges that it accepts, and has in fact received, donations through the webpage from individual and organizational donors from several states.  *See id.* at ¶¶ 21-22.   Therefore, the Court declines to grant Defendants' motion based on this element of BGCF's claim.

### 2.    BGCF has alleged facts sufficient to show a likelihood of confusion

Whether Defendants' use of the disputed trademark is likely to cause confusion among consumers regarding the origin of the goods or services offered by the parties is the "touchstone" of trademark infringement liability.  *See Hensley Mfg.*, 579 F.3d at 610.  Courts typically weigh the following factors when evaluating likelihood of confusion:

> (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels

---

[2] In fact, Defendants note that the United States Patent and Trade Office's database contains over 4,000 live registered trademarks *containing* "Community Foundation" and over 6,000 marks containing same that have been cancelled or abandoned.  *See* DE 6-1 at 7.  This reflects that the USPTO considers a Community Foundation named for a specific person, community, purpose, etc. not generic and potentially entitled to mark protection.

used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines.

*Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). The *Frisch's* factors "imply no mathematical precision, but are simply a guide to help determine whether confusion is likely." *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). "The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Id.*

Defendants' primary argument is that there is no likelihood of confusion because once the Affiliate Fund completes the disaffiliation process, the Affiliate Fund will no longer be affiliated with or exist as a subsidiary of BGCF. *See* DE 6-1 at 9-10. In essence, there can be no infringement where there is no competing trademark. This, of course, begs the question of disaffiliation effectiveness, propriety, and legal impact. One issue now is that the disaffiliation process is incomplete such that the Affiliate Fund, on this record, still exists as an active fund under BGCF's management. True enough that the status of this claim could evolve based on disaffiliation. But until that happens, the Fund still exists as a subsidiary component of BGCF. Against this backdrop, the Court considers the factors enumerated in *Frisch's*.

First, the strength of the senior mark. "The strength of a mark is a factual determination of the mark's distinctiveness." *Bliss Collection, LLC v. Latham Cos., LLC*, 82 F.4th 499, 509 (6th Cir. 2023) (quoting *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1264 (6th Cir. 1985)). As discussed above in Section III.a.1., BGCF has alleged facts indicating its descriptive mark has acquired secondary meaning. BGCF alleges that the Affiliate Fund has functioned continuously for more than 20 years, utilizing its trademark throughout in print materials and on its webpage and receiving donations from individual and organizational donors from several states. *See* DE 1 at ¶ 22. Second, BGCF has alleged strong relatedness between the Affiliate Fund and MCCF, Inc.,

as they are both charitable organizations established to benefit Magoffin County, *compare* DE 1-1 at 1, *with* DE 6-3 at 3, and would be direct competitors in an overlapping sphere, including potentially for charitable donations.[3]  *See Bliss*, 82 F.4th at 511.  Third, and importantly, the similarity of the marks is beyond debate—Defendants' MCCF, Inc. is identical to BGCF's disputed mark, with the trivial addition of the mandatory corporate identifier.  Fourth, BGCF admits that there is no evidence of actual confusion at this stage, but "[d]ue to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant[.]"  *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 284 (6th Cir. 1997).  The fifth factor, marketing channels used, considers "how and to whom the respective goods or services of the parties are sold."  *Champions Golf*, 78 F.3d at 1120.  BGCF notes that both parties use local fundraising and donor solicitation within or concerning the same community.  *See* DE 8 at 6.  The sixth factor concerns "how carefully a consumer selects a particular good or service[.]"  *Bliss*, 82 F.4th at 513 (citing *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 796-97 (6th Cir. 2015)).  Relevantly, BGCF alleges that "deception or misleading has been material in that it is likely to influence giving decision of donors and result in the loss of goodwill and trust among partner organizations, community stakeholders, and service recipients."  DE 1 at ¶ 44.  Relating to the seventh factor, intent in selecting marks, BGCF alleges that Defendants intended to "utilize the goodwill" of the Affiliate Fund "for [Salyer's] own profit."  *Id.* at ¶ 2.  The eighth factor, likelihood of expansion, looks at whether either party may expand to compete with the other or be marketed to the same consumers.  *See Bliss*, 82 F.4th at 514.  BGCF alleged that Defendants "intended and intends to divert estate assets or other donations from [BGCF]."  DE 1 at ¶ 2.  Indeed, Plaintiff alleges that such diversion in fact has occurred.  *See id.* at ¶¶ 30-31.

---

[3] The Court cannot properly consider the Salyer affidavit in this context.

The balance of the *Frisch's* factors weighs easily, certainly plausibly, in favor of finding a likelihood of confusion. Thus, the Court finds that BGCF has properly alleged a likelihood of confusion.

### 3.   BGCF has alleged sufficient use in commerce

Defendants assert that, to this point, they have not taken an action that constitutes use in commerce. *See* DE 6-1 at 7-8. The Lanham Act defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade[.]" 15 U.S.C. § 1127. The Act further explains that a service is used in commerce "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce[.]" *Id.* In other words, the good or service must have been "used in a way which is typical in a particular industry[.]" *NetJets*, 602 F. App'x at 245 (internal quotations omitted).

BGCF contends that the "use" element is met through Defendants' imminent use of the mark and their intent to "stand in the shoes" of the Affiliate Fund, as evidenced by Defendants efforts to gain control of funds that would otherwise inure to BGCF and the Affiliate Fund.[4] DE 8 at 7-8. On this point, BGCF alleges in its Complaint that Salyer attempted to bring proceeds of an investment fund under the control of Mr. Patrick's Estate, even though there was a beneficiary designation directing that those proceeds were payable to BGCF upon Mr. Patrick's death. *See* DE 1 at ¶ 30. Additionally, BGCF alleges that Salyer moved for and obtained an order from Magoffin District Court directing an investment company to pay account proceeds to the Estate by

---

[4] BGCF also contends that Defendants have begun using the disputed mark in commerce by maintaining a website, publishing print materials, soliciting donations, and managing those contributions and expectancy interests. *See* DE 8 at 7 n.4 (citing DE 1 at ¶¶ 21-24, 29-34, 42-45, 53-58). The Court rejects much of this argument because the paragraphs of the Complaint BGCF cites in support of this argument largely do not actually make those allegations. The diversion particulars in ¶¶ 30-31 are important, though, because they represent actual diversion of assets allegedly meant for the Affiliate Fund by the incorporator of the allegedly infringing new entity. Those allegations are of significance in moving plausibly from speculative to actual or imminent harm.

representing that an MCCF fund does not exist. *See id.* at ¶ 31. The funds allegedly should have fallen within Affiliate Fund control.

The Lanham Act grants district courts the "power to grant injunctions…to prevent a violation under subsection (a), (c), or (d), of section 1125 of this title." 15 U.S.C. § 1116(a). BGCF requests such injunctive relief. *See* DE 1 at ¶ 69. Based on the alleged imminence of Defendants' use of the disputed mark and Defendants' plain position that MCCF, Inc. will replace the Affiliate Fund under the dissolution mechanics, along with the actions already taken by Salyer to divert funds from BGCF, the Court finds that BGCF has sufficiently pleaded use or imminent use of the disputed trademark to survive Defendants' motion. Indeed, Defendants' expressed aim is diversion of all proceeds from the Affiliate Fund, with that fund ceasing to exist. *See Essie Cosmetics, Ltd. v. Dae Do Int'l, Ltd.*, 808 F. Supp. 952, 957 (E.D.N.Y. 1992) (explaining that a court may grant injunctive relief before actual use in commerce where such use is "imminent and impending") (citing J. Thomas McCarthy, 2 Trademarks and Unfair Competition, § 30.5 at 470 (2d ed. 1984)); *Fund of Funds, Ltd. v. First Am. Fund of Funds, Inc.*, 274 F. Supp. 517, 527 (S.D.N.Y. 1967) ("To postpone the granting of relief until actual injury could be proved would be to deprive the equitable remedy of its most valuable trait— the dispensation of preventive justice. The court may properly presume that the confusion of source will be injurious and therefore wield its injunctive powers with dispatch to prevent the infliction of harm.") (internal citations omitted). The Court rejects the argument that the case should be dismissed because Plaintiff has failed to concretely allege use or imminent use of the protected mark. Plaintiff's well-pleaded facts, and reasonable inferences from them, plausibly support liability under the Act.

11

**b.**    **State Law Claims**

Defendants also move to dismiss BGCF's claims of tortious interference with a prospective advantage (Count II), breach of fiduciary duty (Count III), and breach of contract (Count IV). *See* DE 6-1 at 10-11. Defendants' basis for dismissing the state law claims is clearly inadequate to obtain the relief sought; Defendants do not cite any legal authority as grounds for dismissal, nor do they identify the relevant elements of the claims that BGCF failed to adequately plead. *See id.* Instead, Defendants merely reiterate that they are partially through the disaffiliation process, but they do not explain how this is grounds for dismissing the state law claims. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to…put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)). The Court finds Defendants' argument for dismissing Counts II through IV undeveloped and will therefore deny the motion as to those claims. *See* LR 7.1(a) ("A motion must state with particularity the grounds for the motion, the relief sought, and the legal argument necessary to support it.").

**IV.**    **Conclusion**

For the foregoing reasons, the Court **DENIES** DE 6**,** Defendants' motion. Per DE 4, Judge Atkins may now proceed with building a schedule and managing the case.

This the 8th day of June, 2026.

Signed By:

*Robert E. Wier*

**United States District Judge**